Filed 10/28/13  Oggi's Pizza & Brewing Co. v. Durrant CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| OGGI'S PIZZA & BREWING COMPANY, | D061848 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 32-2009-97186-CU-BC-CTL) |
| ROBERT DURRANT, | |
| Defendant and Appellant. | |


APPEAL from a judgment and a postjudgment order of the Superior Court of San Diego County, Timothy B. Taylor, Judge.  Appeal from judgment dismissed; postjudgment order affirmed in part and reversed in part.


Law Office of Shelly K. Pawchuk and Shelly K. Pawchuk for Defendant and Appellant.

Preovolos Lewin & Hezlep and Morgan Hezlep for Plaintiff and Respondent.

Following a judgment against him in a lawsuit filed by Oggi's Pizza & Brewing Company (Oggi's), Robert Durrant filed a notice of appeal from the judgment and from

the trial court's order denying his motion for judgment notwithstanding the verdict (JNOV). In his appeal from the judgment and the order deny the JNOV motion, Durrant contends that the record does not contain sufficient evidence to support the jury's award of (1) $1.74 million in compensatory damages or (2) $500,000 in punitive damages. In Durrant's appeal from the judgment, he also contends that the special verdict form was flawed because it failed to allocate damages between different causes of action.[1]

As we will explain, Durrant's appeal from the judgment is untimely, and we therefore dismiss it.

As to Durrant's appeal from the order denying the JNOV motion, (1) Durrant has waived his challenge to the sufficiency of the evidence to support the compensatory damages award because he has failed to carry his burden to provide an adequate appellate record; but (2) his challenge to the punitive damages award has merit because Oggi's failed to establish Durrant's current financial condition. Accordingly, we reverse the order denying the JNOV motion insofar as it rejects the challenge to the punitive damages award, and we remand the matter and direct that the trial court amend the judgment to delete the punitive damages award against Durrant.

---

[1] Durrant first raised his challenge to the special verdict form as part of his motion for a new trial. However, "it has long been settled that an order *denying* a motion for new trial is not independently appealable and may be reviewed only on appeal from the underlying judgment." (*Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 19.) Therefore, we dispose of Durrant's challenge to the special verdict form as part of our dismissal of the untimely appeal from the judgment.

2

# I

## FACTUAL AND PROCEDURAL BACKGROUND

According to the operative second amended complaint (the complaint),[2] Oggi's is a restaurant franchisor that entered into an agreement with DSB Enterprises, Inc. (DSB) in 2001 allowing DSB to operate an Oggi's franchise in Vista, California (the franchise agreement). At the time, DSB was owned by Daniel Borshell and Dale Borshell. After defaults by DSB, Oggi's terminated the franchise agreement on August 6, 2009, putting DSB on notice that it was to immediately cease operating as an Oggi's restaurant.

At some point in August 2009, DSB was apparently sold to Oceans Restaurant Corporation, Inc. (Oceans). Durrant was allegedly a shareholder, director and officer of Oceans. Durrant continued to operate the restaurant as an Oggi's and use Oggi's trademarks despite the termination of the franchise agreement and the absence of any permission from Oggi's for Durrant to operate an Oggi's restaurant. According to the complaint, this conduct continued for several months, ceasing only after the trial court granted injunctive relief and then issued contempt orders against Durrant for violating the injunction.

Following motion practice, Oggi's lawsuit proceeded to trial against DSB, Daniel and Dale Borshell, Oceans and Durrant.

---

2　　Because Durrant has not provided us with a complete record of the evidence presented at trial in this action, we necessarily base our background discussion on the allegations of the complaint.

After Dale Borshell was dismissed on a motion for nonsuit, the case went to the jury, which found against the defendants as follows: (1) Breach of contract: DSB; (2) Concealment: DSB and Daniel Borshell; (3) Conversion: DSB, Daniel Borshell, Durrant and Oceans; (4) Misappropriation of trade secrets, with a further finding that defendants acted willfully and maliciously: DSB, Daniel Borshell, Durrant and Oceans; and (5) Conspiracy to commit trade name infringement, misappropriation of trade secrets, and/or conversion: DSB, Daniel Borshell, Durrant and Oceans. In a special verdict form that did not ask the jury to differentiate between the damages caused by the different defendants, the jury awarded $1.74 million in compensatory damages to Oggi's. As a predicate for a punitive damages award, the jury further found that DSB, Durrant and Oceans acted with malice, oppression or fraud.

In a second phase of the trial, the jury awarded punitive damages against DSB, Durrant and Oceans, on a joint and several basis, in the amount of $500,000. After the trial court ruled on the remaining equitable remedies sought by Oggi's, the trial court entered judgment on January 23, 2012, with the judgment amended on February 1, 2012, to provide for an award of costs. Notice of the amended judgment was served on February 2, 2012.

On February 14, 2012, Durrant and Oceans filed a JNOV motion and a motion for a new trial. Among other things, the JNOV motion argued that insufficient evidence supported the awards for compensatory and punitive damages. On March 9, 2012, the trial court denied the JNOV motion and the motion for a new trial. The superior court

4

clerk served the order denying the JNOV motion and the motion for a new trial on March 12, 2012.[3]

On April 12, 2012, Durrant filed notices of appeal from the judgment and from the motion denying the JNOV motion.

## II

## DISCUSSION

A.    *The Appeal from the Judgment Is Dismissed as Untimely*

As an initial matter, we address a problem with the timeliness of the appeal from the judgment that we noted upon our review of the record and gave the parties an opportunity to address in supplemental letter briefs.

Because a motion for a new trial and a motion for JNOV were filed in this matter, the timeliness of this appeal is governed by California Rules of Court, rule 8.108(b)(1) and (d)(1).[4]   Rule 8.108(b)(1) provides: "If any party serves and files a valid notice of intention to move for a new trial, the following extensions of time apply:  [¶]  (1) if the motion for a new trial is denied, the time to appeal from the judgment is extended for all parties until the earliest of:  [¶]  (A) 30 days after the superior court clerk, or a party serves an order denying the motion or a notice of entry of that order;  [¶]  (B) 30 days after denial of the motion by operation of law; or  [¶]  (C) 180 days after entry of

---

3    DSB and Daniel Borshell also filed a motion for a new trial and a JNOV motion, which the trial court denied in the same minute order denying Durrant's and Ocean's motions.

4    Unless otherwise indicated, all further rule references are to the California Rules of Court.

judgment." Rule 8.108(d)(1) provides for the same deadlines after a denial of a JNOV motion, i.e., the *earliest* of 30 days after service of the ordering denying the motion, 30 days after denial of the motion by operation of law, or 180 days after entry of judgment.

Here, the superior court clerk served the order denying the motion for a new trial and motion for JNOV on March 12, 2012. Thus, the earliest of the three deadlines set forth in rule 8.108(b)(1) and (d)(1) was April 11, 2012, which was 30 days from the date the clerk served the order. However, Durrant did not file his notice of appeal until one day after the deadline — on April 12, 2012. Accordingly, the appeal from the judgment is not timely.[5]

"The failure to file a notice of appeal within the applicable time period deprives the appellate court of jurisdiction." (*Maides v. Ralphs Grocery Co.* (2000) 77 Cal.App.4th 1363, 1366; see also *Hollister Convalescent Hosp., Inc. v. Rico* (1975) 15 Cal.3d 660, 670.) Because Durrant did not file his notice of appeal from the judgment within the applicable time period, we lack jurisdiction over that appeal and, accordingly, we dismiss it. (*People v. Mendez* (1999) 19 Cal.4th 1084, 1094 ["An untimely notice of appeal is 'wholly ineffectual . . . and the appellate court has no power to give relief, but must dismiss the appeal on motion or on its own motion.'" (Capitalization omitted.)].)

---

[5]     The appeal from the order denying the JNOV motion, on the other hand, is timely. The applicable deadline is set forth in rule 8.104, which provides for a deadline of 60 days from the superior court clerk's service of notice of entry of the order denying the JNOV motion. (Rule 8.104(a)(1)(A), (e).) Thus, Durrant had 60 days from March 12, 2012, to appeal the order denying the JNOV motion.

B.      *The Appeal from the Order Denying the JNOV Motion*

We now turn to the timely appeal from the order denying the JNOV motion.

Durrant argues that the trial court erred in ruling on the JNOV motion in two respects. Specifically, Durrant contends that (1) insufficient evidence supports the jury's award of compensatory damages; and (2) Oggi's submitted insufficient evidence of Durrant's current financial condition to permit an award of punitive damages.

1.      *Standard of Review*

"On appeal from the denial of a JNOV motion, this court reviews the record in order to make an independent determination whether there is any substantial evidence to support the jury's findings. . . . The scope of the review is limited to determining whether there is any substantial evidence, contradicted or not, to support the jury's verdict. . . . Applying the substantial evidence rule, we resolve 'all conflicts in the evidence and all legitimate and reasonable inferences that may arise therefrom in favor of the jury's findings and the verdict. . . .' . . . Thus, this court must accept as true the evidence supporting the verdict, disregard conflicting evidence, and indulge every legitimate inference to support the verdict. . . . Accordingly, we do not weigh the evidence or judge the credibility of the witnesses. . . . If sufficient evidence supports the verdict, we must uphold the trial court's denial of the JNOV motion." (*Murray's Iron Works, Inc. v. Boyce* (2008) 158 Cal.App.4th 1279, 1284-1285, citations omitted.)

2.  *Durrant Waived His Challenge to the Sufficiency of the Evidence to Support the Compensatory Damages Award Because He Failed to Provide an Adequate Appellate Record*

We first address the portion of the JNOV motion challenging the compensatory damages award against Durrant. As we have explained, the jury awarded $1.74 million in compensatory damages, which the judgment describes as a joint and several liability of Daniel Borshell, DSB, Oceans and Durrant. Durrant contends that insufficient evidence supports the compensatory damages award as to him.

The standards for awarding compensatory damages against Durrant for the causes of action against him were set forth in the jury instructions. Specifically, damages for the conversion cause of action would consist of "1. The fair market value of each item converted at the time [defendants] wrongfully exercised control over the items; and [¶] 2. Reasonable compensation for the time and money spent by Oggi's . . . in attempting to recover the converted items," and lost profits that Oggi's would have received but for the wrongdoing. For the misappropriation of trade secrets cause of action, the jury was instructed it could award lost profits and that Oggi's could recover for unjust enrichment and any "actual loss." For each of the causes of action against Durrant, the jury was also instructed that Oggi's was claiming "lost income, lost profits and dilution and damages to Oggi's . . . name, reputation and goodwill."

In support of his argument that insufficient evidence supports an award of compensatory damages under these standards, Durrant argues, "Oggi's had the burden of proving it incurred damages as a direct and proximate cause of Durrant's [tortious] conduct. Despite this, Oggi's introduced no evidence that it incurred any type of damage

8

from Durrant's acquisition, use or disclosure of its trade secrets and [m]arks or conversion thereof to support such damages and therefore, it did not meet its burden." In addition, Durrant contends that "[t]here was also <u>no evidence</u> introduced to show that Durrant benefited financially from his [tortious] conduct. Furthermore, there was <u>not a single piece of evidence presented</u> as to the value of any particular item Oggi's alleged was converted by Durrant or the time or money it spent in attempting to recover the converted items."

Durrant has waived his challenge to the sufficiency of the evidence to support the compensatory damages award because he has not provided an adequate appellate record. The first phase of the trial took place during a 10-day period between December 5 and 15, 2011. However, the record that Durrant provided of the liability phase of the trial consists of only a few trial exhibits and the testimony of a single witness, Carl Sheeler, whom Oggi's called as an expert witness on "business valuation economic damages." Sheeler testified that he was retained by Oggi's to offer an opinion on causation and damages, and during his testimony he opined that Oggi's suffered economic harm "as a result of the defendants' conduct," relying on a chart he prepared detailing the different categories of economic harm.[6]

---

6    During his testimony, Sheeler explained his opinion by referring to a chart he created — contained in the appellate record — which concluded that the losses to Oggi's consisted of "loss in value to the store," "loss in value to Oggi's brand," "loss in income to Oggi's," "loss in income from the store," and "loss in income from unpaid fees," for a total loss of $2,839,000.

Because we have no record of the first phase of the trial except for the testimony of a single witness, the appellate record provided by Durrant is woefully inadequate for us to evaluate his contentions that Oggi's presented "no evidence" that (1) it "incurred any type of damage" from Durrant's wrongdoing; (2) Durrant benefited from his wrongdoing; and (3) the items converted by Durrant had value and Oggi's devoted resources to recovering them.

Further, without reviewing the entire record, we obviously cannot verify Durrant's assertion that Sheeler's testimony was the *only* evidence during the entire trial relevant to the issue of damages. Even were we to accept Durrant's assertion and focus solely on the adequacy of Sheeler's testimony, the record that Durrant has provided is insufficient for us to evaluate whether the items of damage that Sheeler described could have been caused by Durrant's wrongdoing. Specifically, because we have no evidence from the trial explaining Durrant's role in the events that gave rise to this litigation or the extent of his wrongdoing, we are unable to analyze whether Sheeler could have been describing harm caused by Durrant or only by other defendants.

"'It is the duty of an appellant to provide an adequate record to the court establishing error. Failure to provide an adequate record on an issue requires that the issue be resolved against appellant. . . .' This principle stems from the well-established rule of appellate review that a judgment or order is presumed correct and the appellant has the burden of demonstrating prejudicial error." (*Hotels Nevada v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 348, citations omitted.) "[A] record is inadequate, and appellant defaults, if the appellant predicates error only on the part of the

10

record he provides . . . , but ignores or does not present to the appellate court portions of the proceedings below which may provide grounds upon which the decision of the trial court could be affirmed."  (*Uniroyal Chemical Co. v. American Vanguard Corp.* (1988) 203 Cal.App.3d 285, 302.)  When an appellant "fail[s] to provide an adequate record, appellant cannot meet his burden to show error and we must resolve any challenge to the order against him."  (*Hotels Nevada*, at p. 348.)  Issues raised without the provision of an adequate appellate record for us to evaluate them are "deemed waived."  (*Pringle v. La Chapelle* (1999) 73 Cal.App.4th 1000, 1003.)

Because Durrant failed to provide an adequate appellate record for us to evaluate his contention that insufficient evidence supports the compensatory damages award, he waived that issue on appeal.

3. *The Punitive Damages Award Is Not Supported by Sufficient Evidence Because Oggi's Failed to Establish Durrant's Financial Condition at the Time of Trial*

The second phase of the trial — which took place on December 19, 2011 — was limited to the issue of punitive damages, resulting in a jury award of $500,000 in punitive damages against Durrant, Oceans and DSB on a joint and several basis.[7]  Durrant contends that the trial court should have granted his JNOV with respect to the punitive damages award because Oggi's failed to establish Durrant's financial condition at the time of trial.  As we will explain, we agree.

---

[7]     Because Durrant has provided us with a full record of the proceedings during the second phase of the trial, the record is adequate for us to review Durrant's argument that Oggi's failed to present sufficient evidence of his financial condition during that portion of the trial.

11

We begin our discussion by reviewing the evidence presented during the second phase of the trial. Durrant was the sole witness called by Oggi's. During Durrant's testimony, Oggi's authenticated several documents and introduced them into evidence. Central among those documents was a one-page financial statement that Durrant created in June 2009 (two and half years before trial) disclosing his assets and liabilities, showing that Durrant's net worth in 2009 was approximately $2.2 million. According to the financial statement, some of Durrant's major assets consisted of funds in bank and money market accounts, marketable securities, real estate investments, his personal residence and the cash value of his life insurance. Oggi's also introduced Durrant's federal tax returns for 2009 and 2010, both of which showed significant losses, and DSB's 2009 and 2010 tax returns. The examination of Durrant by counsel for Oggi's was limited to inquiring about the documents that were being introduced, and did not include any questions about Durrant's current assets or liabilities.

Durrant's counsel examined Durrant and gave him a chance to comment on whether he still owned the assets that he had listed on the financial statements in June 2009. Durrant testified that he no longer owned most of those assets, that he had to sell the assets to cover the financial losses he had experienced over the last two years, and only some of his savings remained.

"'Under California law, a punitive damages award must be based on three factors: (1) the reprehensibility of the defendant's conduct; (2) the amount of compensatory damages awarded to or actual harm suffered by the plaintiff; and (3) the defendant's financial condition.'" (*Behr v. Redmond* (2011) 193 Cal.App.4th 517, 535.) Durrant

12

challenges the sufficiency of the evidence only as to the third factor — his financial condition.[8]

"An appellate court may reverse an award of punitive damages only if the award appears excessive as a matter of law or is so grossly disproportionate to the ability to pay as to raise a presumption that it was the result of passion or prejudice." (*Zaxis Wireless Communications, Inc. v. Motor Sound Corp.* (2011) 89 Cal.App.4th 577, 583.) "Where the award is grossly disproportionate to the defendant's wealth, a presumption arises that the jury was influenced by passion and prejudice." (*Id.* at p. 582.)

"Accordingly, 'an award of punitive damages cannot be sustained on appeal unless the trial record contains meaningful evidence of the defendant's financial condition.' [Citation.] 'Without such evidence, a reviewing court can only speculate as to whether the award is appropriate or excessive.'" (*Baxter v. Peterson* (2007) 150 Cal.App.4th 673, 680 (*Baxter*).) "[A]bsence of evidence of the defendant's financial condition frustrates meaningful appellate review, since the appellate court cannot determine whether the award might bankrupt the defendant." (*Robert L. Cloud & Associates, Inc. v. Mikesell* (1999) 69 Cal.App.4th 1141, 1152 (*Robert L. Cloud*).) Thus, "[e]vidence of the

---

8    We reject Oggi's argument that Durrant has not provided a sufficient record for us to review the punitive damages award due to the absence of any evidence about the reprehensibility of Durrant's conduct, which — as we have described — is the first factor relevant to a punitive damages award. Our reversal of the punitive damages award is based solely on the lack of evidence as to Durrant's financial condition at the time of trial. Durrant *has* supplied us with a complete appellate record as to that issue. As we need not, and do not, reach the issue of whether substantial evidence supports a finding that Durrant's conduct was sufficiently reprehensible to support a punitive damages award, the absence of an appellate record on the reprehensibility of Durrant's conduct does not impact our analysis.

defendant's financial condition is a prerequisite for an award of punitive damages." (*Green v. Laibco, LLC* (2011) 192 Cal.App.4th 441, 452.)  Of central importance here, "[a] punitive damages award is based on the defendant's financial condition *at the time of trial*[,]" and will not be sustained on appeal if the record lacks such evidence.  (*Kelly v. Haag* (2006) 145 Cal.App.4th 910, 915, italics added (*Kelly*).)

"[I]t is the plaintiff's burden to establish the defendant's financial condition. . . .  'It is not too much to ask of a plaintiff seeking such a windfall to require that he or she introduce evidence that will allow a jury and a reviewing court to determine whether the amount of the award is appropriate and, in particular, whether it is excessive in light of the central goal of deterrence.'  . . .  Further, it 'is inherently prejudicial to require a defendant to introduce evidence of personal finances.'"  (*Kelly*, *supra*, 145 Cal.App.4th at p. 916, citations omitted.)  As our Supreme Court has explained, "[r]equiring a defendant to prove his or her own financial condition may improperly taint the jury's decision whether to impose punitive damages in the first instance[,]" because "the jury is led to think, 'This person must know he deserves a beating or else he would not be pleading poverty.'"  (*Adams v. Murakami* (1991) 54 Cal.3d 105, 121.)

There is no "'rigid standard for measuring a defendant's ability to pay.'  Net worth is the most common measure, but not the exclusive measure. . . .  In most cases, evidence of earnings or profit alone are not sufficient 'without examining the liabilities side of the balance sheet.'  . . .  'What is required is evidence of the defendant's ability to pay the damage award.'  . . .  Thus, there should be some evidence of the defendant's actual wealth.  Normally, evidence of liabilities should accompany evidence of assets, and

14

evidence of expenses should accompany evidence of income." (*Baxter*, *supra*, 150 Cal.App.4th at p. 680, citations omitted.) "[C]ourts have clarified that evidence of the defendant's annual income, standing alone, is not 'meaningful evidence . . .'" of the defendant's financial condition. (*Robert L. Cloud*, *supra*, 69 Cal.App.4th at p. 1152.)

Here, as we will explain, the evidence presented was insufficient to establish Durrant's financial condition at the time of trial.

Trial took place in December 2011, but the financial statement that Oggi's relied on was two and half years old, from June 2009. As Durrant testified, he had undergone a significant change in his financial condition since that time and the financial statement no longer accurately represented his wealth. Oggi's presented Durrant's most recent income tax returns, but "a consideration of income alone does not permit meaningful review and 'something more is required.'" (*Kelly*, *supra*, 145 Cal.App.4th at p. 916.)

Although Oggi's presented evidence of Durrant's *former* assets, "without any evidence he still held the assets, or of the amounts of his liabilities, the [punitive damages] award is unsupported by substantial evidence and excessive." (*Kelly*, *supra*, 145 Cal.App.4th at p. 917 [punitive damages award reversed because evidence did not show that the defendant *still* held certain assets relevant to his financial condition]; see also *Baxter*, *supra*, 150 Cal.App.4th at p. 681 [reversing punitive damages award because the plaintiff failed to present evidence of the defendant's current liabilities, making "[t]he record . . . insufficient for a reviewing court to evaluate [the defendant's] ability to pay" the punitive damages award].)

15

When, as here, the plaintiff has had a "full and fair opportunity to present the case for punitive damages" (*Kelly*, *supra*, 145 Cal.App.4th at p. 919) but fails to present sufficient evidence of the defendant's *current* financial condition, the proper appellate remedy is to reverse the punitive damages award. (*Id*. at p. 920; see also *Baxter*, *supra*, 150 Cal.App.4th at p. 682 ["When a punitive damage award is reversed based on the insufficiency of the evidence, no retrial of the issue is required."].)

Accordingly, we reverse the portion of the trial court's order denying the motion for JNOV as to the punitive damages award against Durrant, and we remand for the trial court to amend the judgment accordingly.

## DISPOSITION

The appeal from the judgment is dismissed as untimely. The trial court's order denying the motion for JNOV is reversed with respect to the punitive damages award against Durrant. This action is remanded with directions that the trial court amend the judgment to delete the punitive damages award against Durrant. The parties shall bear their own costs on appeal.

_____
IRION, J.

WE CONCUR:


_____
BENKE, Acting P. J.


_____
NARES, J.

16